IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In the Matter Of<br><br>JAMES R. S. HERBERT and BARBARA ELLIS,<br><br>        Plaintiffs,<br><br>  vs.<br><br>FISHER SCIENTIFIC COMPANY, L.L.C., a Delaware corporation,<br><br>VWR INTERNATIONAL, LLC, successor in interest to Sargent-Welsh Scientific Company, a Delaware corporation; and<br><br>DOES 1 to 25,<br><br>        Defendants. | CIVIL No. 13-00452 DKW-BMK<br>CIVIL No. 13-00705 DKW-BMK<br>(Consolidated Cases)<br><br><br>**ORDER GRANTING DEFENDANT FISHER SCIENTIFIC COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS*** |

**ORDER GRANTING DEFENDANT FISHER SCIENTIFIC
COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED
<u>COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS*</u>**

1

## INTRODUCTION

Plaintiffs bring suit against two distributors of scientific equipment for injuries arising from exposure to asbestos products used for teaching chemistry courses. Although Plaintiffs currently reside in Hawai'i, the alleged exposure occurred abroad, primarily in Indonesia in the 1980s. Because Defendants have demonstrated that Indonesia is a more convenient forum – and despite the presumption in favor of the domestic Plaintiffs' choice of forum – the Court exercises its discretion to dismiss this case on the grounds of *forum non conveniens*, subject to several conditions explained below.

## BACKGROUND

On January 17, 2014, Plaintiffs James R. S. Herbert, a lawful permanent resident, and Barbara Ellis, Herbert's wife and a United States citizen, filed their First Amended Complaint against Fisher Scientific Company, L.L.C. ("Fisher") and VWR International, successor in interest to Sargent-Welch Scientific Company ("VWR" or "Sargent-Welch"). *See* Herbert Decl. ¶¶ 3-4. Herbert suffers from malignant mesothelioma and other asbestos-related injuries, principally affecting his lungs, chest cavity, and cardiovascular system.

For approximately twenty years, Herbert worked as a chemistry teacher in several schools around the world, including the Northwood School in London,

England from 1978 to 1981, the American School in Switzerland (or "TASIS") in Athens, Greece from 1981 to 1983, and the Jakarta International School in Jakarta, Indonesia from 1983 to 1998. First Amended Complaint ¶ 7. Plaintiffs allege that, while working in Jakarta, Herbert was exposed to several asbestos-containing products supplied by Defendants, including asbestos gloves, asbestos squares and mats, asbestos-containing wire gauze, and asbestos wool and fibers in bottles. Plaintiffs attribute Herbert's mesothelioma to this exposure. First Amended Complaint ¶¶ 3, 5-6.

In 2003, Plaintiffs moved to Honolulu, Hawai'i, where Herbert continued to teach chemistry. Herbert Decl. ¶ 19. On July 20, 2012, Herbert was diagnosed with malignant mesothelioma by Mark Grattan, M.D. at Straub Clinic and Hospital in Honolulu. *Id.* at ¶ 24. He has since seen Elaine Imoto, M.D. and Jonathan Cho, M.D. at The Queens Medical Center in Honolulu for treatment, including chemotherapy. *Id.* at ¶ 25. From March 21 to March 31, 2013, Herbert was hospitalized at Brigham & Women's Hospital in Boston, Massachusetts, where he had an operation to remove the pleura lining the chest wall, part of his diaphragm, the lining around the heart, lymph nodes, and an entire lung. *Id.* at ¶ 26. He continues to see Dr. Cho at least once a month to follow up on his surgery and to monitor his cancer. *Id.* at ¶ 28.

Plaintiffs' First Amended Complaint alleges that Defendants negligently designed, manufactured, marketed, and distributed asbestos products that were in a defective and unsafe condition, and unfit for use in any way. They allege causes of action sounding in negligence (Count I) and strict products liability (Count II), and for breach of warranties (Count III), market share liability (Count IV), enterprise liability (Count V), intentionally causing injuries to Herbert (Count VI), loss of consortium suffered by Ellis (Count VII) and punitive damages (Count VIII). On January 24, 2014, Fisher filed its motion to dismiss, in which VWR joined on January 27, 2014. The Court heard oral argument on the motion on March 7, 2014.

## DISCUSSION

Defendants contend that Plaintiffs' claims should be adjudicated in Indonesia and ask the Court to dismiss Plaintiffs' case on the grounds of *forum non conveniens*. Plaintiffs oppose the motion, principally asserting that this district is the more convenient forum and that their forum choice is entitled to deference.

## I.     Legal Standard

"At bottom, the doctrine of *forum non conveniens* is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that

4

jurisdiction ought to be declined." *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527 (1947).

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1224 (9th Cir. 2011). According to the Ninth Circuit:

> The factors relating to the private interests of the litigants include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1145).
>
> * * * *
>
> The public factors related to the interests of the forums include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms.,* 588 F.3d at 1211(quoting *Tuazon*, 433 F.3d at 1181).

*Carijano*, 643 F.3d at 1229, 1232.

With this framework in mind, the Court turns to the specifics of Defendants' motion.

## II. <u>Indonesia Is an Adequate Forum</u>

"The first requirement for a *forum non conveniens* dismissal is that an adequate alternative forum is available to the plaintiff. The Supreme Court has held that an alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990)). Here, both Defendants have consented to service of process in Indonesia.

"[A] foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144. In support of its argument that Indonesia is an adequate forum, Fisher proffers the unrebutted Declaration of Trijono Harjanto, an Indonesian attorney and lecturer on the law, who practices before all levels of Indonesian courts. Harjanto states that the Indonesian Civil Code, and specifically the Indonesian Consumer Protection Law, recognizes each of the claims alleged in Plaintiffs' Complaint.

Harjanto Decl. ¶¶ 7, 11-12, 38-52.   Moreover, Indonesian courts allow for the

recovery of both economic and non-economic damages and provide specific

discovery mechanisms and procedural safeguards.   Harjanto Decl. ¶¶ 13-16, 48-49.

Harjanto opines that "Central Jakarta District Court is an adequate, proper and

appropriate forum possessing jurisdiction over this matter," and that "Indonesian

courts . . . have the competence and ability to handle plaintiffs' suits arising from

Toxic Tort/Asbestos Personal Injury[.]"   Harjanto Decl. ¶ 52.

Harjanto's conclusions are consistent with those from several federal

courts, which have determined Indonesian courts to provide an adequate alternative

forum, including in the tort context.   *See, e.g., PT United Can Co. v. Crown Cork &*

*Seal Co*., 138 F.3d 65 (2d Cir. 1998); *Gonzales v. P.T. Pelangi Niagra Mitra Int'l*,

196 F. Supp. 2d 482 (S.D. Tex. 2002); *Carney v. Singapore Airlines*, 940 F. Supp.

1496, 1501 (D. Ariz. 1996); *In re Air Crash Disaster Near Palembang, Indonesia*,

2000 WL 33593202 (W.D. Wash. Jan. 14, 2000).

Plaintiffs do not seriously contest that Indonesia is an adequate

alternative forum.   They state only that "litigating in Indonesia is grossly

inconvenient to a terminally ill man and does not provide the same amount of relief

as a court located in Hawai'i would."   Mem. in Opp. at 6; *see also id.* at 38

("Although Indonesia may provide an alternative forum, the balance of private and

public interest factors do not strongly favor dismissal, but favor keeping the case in Hawai'i."). Plaintiffs do not otherwise attack the Harjanto Declaration or provide a declaration of their own to the contrary.

The Court finds that Indonesia would provide Plaintiffs with "some remedy" and is an adequate alternative forum in this case.[1] *See Lueck*, 236 F.3d at 1143 ("The foreign forum must provide the plaintiff with *some remedy* for his wrong in order for the alternative forum to be adequate.") (emphasis added); *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178-80 (9th Cir. 2006) (finding that defendant established the adequacy of the Philippines as an alternative forum where defendant "consent[ed] to service of process in the Philippines" and "offered an extensive affidavit by a former Justice of the Philippine Court of Appeals, detailing background about the Philippines and its court system, the availability of contract and tort relief, the discovery process, and procedural

---

[1] Plaintiffs allege that Herbert was also exposed to asbestos products while teaching in England and Greece. The presence of another potentially adequate alternative forum does not affect the Court's conclusion that Indonesia is an adequate forum. *See, e.g., Vivendi S.A. v. T-Mobile USA, Inc.*, 2008 WL 2345283, at *10 (W.D. Wash. June 5, 2008) ("As the court has determined that all parties are amenable to suit in Poland, it is of no import and the court need not decide whether [defendant] is amenable to suit in multiple alternative fora.").

formalities"). There is no evidence that a Hawaiʻi court would afford Plaintiffs relief different in kind from an Indonesian court, nor is there any requirement, as Plaintiffs contend, that the relief available in both fora be identical. The evidence and law, in fact, is to the contrary. Defendants satisfy the first requirement for dismissal based on *forum non conveniens*.

## III. The Balance of Private and Public Factors Weighs in Favor of Dismissal

The Court first discusses the significance of Plaintiffs' choice of forum, and then weighs the competing private and public interest factors, concluding that dismissal is appropriate under the specific facts and circumstances of this case.

### A. Plaintiffs' Chosen Forum

When the plaintiff is a United States citizen or resident, the plaintiff's choice of his home forum should be accorded deference. *Piper Aircraft*, 454 U.S. at 257. "When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." *Carijano*, 643 F.3d 1216, 1227. However, a domestic plaintiff's choice of a home forum "is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens*." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983). As stated by the Ninth Circuit:

> We afford greater deference to a plaintiff's choice of home forum because it is reasonable and convenient. However, the deference due is "far from absolute." *Lockman Found*., 930 F.2d at 767 . . . A district court has discretion to decide that a foreign forum is more convenient.

*Loya v. Starwood Hotels & Resorts Worldwide, Inc*., 583 F.3d 656, 665 (9th Cir. 2009) (some citations omitted); *see also Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003) (Notwithstanding deference to the plaintiff's forum choice, the Court "does not assign 'talismanic significance to the citizenship or residence of the parties.'") (quoting *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 154 (2d Cir. 1980) (en banc)).

Here, the Court acknowledges and affords appropriate deference to Plaintiffs' choice of home forum, but exercises its discretion in deciding that Indonesia is more convenient. As set forth below, the private and public interest factors weigh in favor of the foreign forum and overcome the presumptive forum selected by Plaintiffs.

### B. <u>Private Interest Factors Weigh In Favor of Dismissal</u>

The Court weighs the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to

trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.   *Lueck*, 236 F.3d at 1145.

### 1.    <u>Residence of the Parties</u>

Plaintiffs reside within this judicial district, while Defendants reside in the United States.   The residence of the parties factor therefore weighs against Indonesia and in favor of Hawai'i.

### 2.    <u>Factors Relating to Witnesses</u>

The Court consolidates its discussion of each of the private interest factors related to witnesses—the first, fourth and fifth factors outlined in *Lueck*. These factors weigh strongly in favor of Indonesia.

With respect to residence, Plaintiffs claim that their experts and the eleven treating doctors that they intend to call are residents of Hawai'i, Massachusetts, North Carolina, Georgia and New York.   Plaintiffs also contend that Defendants' corporate representatives are residents of the United States.   For its part, Fisher claims that all witnesses related to product identification and alternative asbestos exposure are located in Indonesia.

Although Defendants have not identified by name the witnesses presently located in Indonesia,[2] the Court agrees that the testimony of Indonesian witnesses, including product identification witnesses, Herbert's former co-workers, school witnesses with knowledge of the purchase of asbestos-containing products, and witnesses to potential alternative asbestos exposure are material to this case. Product identification and alternative exposure are the principal means by which asbestos cases are typically defended. *See* Fisher Reply at 6, 9-10; *see also Lockwood v. AC & S, Inc.*, 744 P.2d 60, 613 (Wash. 1987) (Recognizing that "the sufficiency of the evidence of causation will depend on the unique circumstances of the case," including evidence of the plaintiff's proximity to the asbestos when

---

[2]Defendants have provided "enough information to enable the District Court to balance the parties' interests." *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). Indeed –

> [t]o carry their burden on this factor, therefore, defendants must delineate how witnesses not subject to compulsory process are critical to the actions. They are not, however, required to identify each potentially critical witness, nor to submit affidavits that provide significant evidentiary detail. *See Piper, supra,* 454 U.S. at 258, 102 S. Ct. 252 (rejecting the suggestion that "defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum," and noting that "[s]uch detail is not necessary. Piper and Hartzell have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of their motion").

*In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1198 (C.D. Cal. 2004).

exposure occurred, the expanse of the workplace where asbestos fibers were released, the extent of time the plaintiff was exposed, the types of asbestos products to which the plaintiff was exposed, and how those products were handled.).   In contrast, it appears Plaintiffs have named witnesses merely to bolster the numbers on their side of the ledger.   For instance, it is not clear what issue in dispute Defendants "corporate representatives" would address.   Nor is it clear that Plaintiffs would realistically call (or the Court would permit) eleven different treating physicians to testify to asbestos-related injuries that are unlikely to be in serious dispute.   The Court's obligation is to look beyond the numbers and to evaluate the materiality of the proposed witnesses.   *See Lueck*, 236 F.3d at 1146 (The "court's focus should not rest on the number of witnesses or quantity of evidence in each locale.   Rather, a court should evaluate 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum.'") (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)) (alteration in *Lueck*).   When doing so, Plaintiffs' proposed list comes up short.

Equally important, the third-party asbestos exposure and product identification witnesses located in Indonesia cannot be compelled to testify in this Court.   Indonesia is not a signatory to the Hague Convention on Taking of Evidence

13

Abroad in Civil or Commercial Matters, 23 U.S.T. 2555 (1968). *See* Harjanto Decl. at ¶ 50; *see also Body by Jake Global, LLC v. Susanto*, 2012 WL 1570019, at *2 (N.D. Cal. May 2, 2012) ("Indonesia is not a member of the Hague Convention; nor does it appear to have an internationally agreed-upon means of service."). The parties accordingly cannot compel the testimony of necessary Indonesian witnesses through letters rogatory. *STM Group, Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992 at *7 (C.D. Cal. July 18, 2011) (noting that "importantly, Peru is not a signatory to the Hague Convention, which allows signatories to obtain letters rogatory to compel testimony of foreign witnesses … [a]s a result, should this action take place in California, there is no assurance that the parties will be able to compel testimony of Peruvian witnesses."). By contrast, the witnesses in the United States are under the control of the parties. These witnesses, in other words, can be brought to court, no matter the forum. Most of Plaintiffs' evidence, for instance, comes from Herbert, Ellis, and Herbert's doctors. These material differences with regard to witnesses weigh strongly in favor of Indonesia. *See Carney v. Singapore Airlines,* 940 F. Supp. 1496, 1509 (D. Ariz. 1996) ("Defendant cannot compel the attendance of the witnesses in Indonesia without compulsory process, and because the witnesses are in Indonesia, they cannot compel them even with compulsory process. Neither Defendant nor any of Defendant's employees were present when

14

the injury occurred, and Plaintiffs do not dispute this fact. As all of the relevant witnesses in Indonesia are third parties, Defendant cannot force these witnesses to participate in deposition or trial."); *Best Aviation Ltd. v. Chowdry*, 2012 WL 5457439, at *5 (C.D. Cal. 2012) ("Here, the majority of witnesses are located in Bangladesh. Litigating the dispute in Bangladesh—where these important and material witnesses are located—ensures that they will be accessible for trial. This factor thus favors dismissal.").

None of the parties, at this early stage of the litigation, has any idea of the number of witnesses in either locale who would need to testify at trial, agreeing only that witnesses based in the continental United States, whose physical presence may be required, would need to travel regardless of whether venue is in Hawaiʻi or Indonesia. More significantly, in this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale. *See, e.g., Candela Corp. v. Palomar Medical Technologies, Inc.*, 2007 WL 738615, at *5 (E.D. Tex. Feb. 22, 2007) ("With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated. . . . Given this reduced need for travel, the court concludes this factor does not weigh in favor of transfer, and is, at most, neutral.").

Accordingly, the cost of bringing witnesses to trial is a neutral factor in the Court's final weighing.

Given that critical witnesses resident in Indonesia are beyond the compulsory process of this Court, and the converse issue with regard to witnesses in the United States is largely mitigated by the parties' control over these witnesses, the Court concludes that the private interest factors relating to witnesses weigh strongly in favor of Indonesia.

### 3.    Access to Evidence and Sources of Proof

The Court next considers the third private interest factor, access to physical evidence and other sources of proof.   Plaintiffs argue that most of the material evidence is located in the United States, where they allege the asbestos containing products were manufactured and distributed.   Plaintiffs also assert that they are willing to secure the production of documents in Indonesia that are under their control.   *See* Mem. in Opp. at 31, 37.

Just as the Court cannot compel the testimony of witnesses located in Indonesia, the Court cannot compel the production of documents or other sources of physical evidence located in Indonesia.   *See* Fed. R. Civ. P. 45(c); *Carney,* 940 F. Supp. at 1509.   Defendants contend that there are product identification and alternative asbestos exposure documents, products and facilities at the Jakarta

International School, including: purchases orders, invoices and product catalogs; records regarding the location of former co-workers; and records relating to possible alternative exposure. They also point to the need for site inspection of school facilities and Plaintiffs' residences.

The Court concludes that the majority of the material evidence relating to product identification and exposure is located in Indonesia, and beyond the power of this Court to compel.

In *Lueck*, the Ninth Circuit concluded that –

> It is clear that evidence important to this dispute exists in both the United States and New Zealand. However, because the district court cannot compel production of much of the New Zealand evidence, whereas the parties control, and therefore can bring, all the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal.

*Lueck*, 236 F.3d at 1147 (footnote omitted). Likewise, in the instant matter, evidence important to the dispute exists in the United States and Indonesia.[3] This Court, however, cannot compel production of the Indonesia evidence, whereas the parties control, and therefore can bring, all of the U.S.-based evidence to Indonesia.

_____

[3]The possibility that relevant evidence may also be located in England or Greece does not alter the Court's analysis. Such evidence would need to be transported to either Hawaiʻi or Indonesia. *See Lueck*, 236 F.3d at 1147 n.4 ("There is also relevant evidence in Canada; but because that evidence must be transported regardless of the ultimate forum, it does not affect the outcome of this case."). Defendants can seek to compel evidence located in England or Greece, regardless of venue, because both countries are signatories to the Hague Convention.

While Plaintiffs offer to secure the production of evidence in Indonesia in the event this matter proceeds in a domestic forum, it is difficult to place much weight on this offer. Herbert last worked in Indonesia in 1998, 16 years ago. What evidence he controls, or can reliably secure, in Indonesia is therefore not evident to this Court.

Defendants assert that they would be unable to effectively defend themselves in this matter without the ability to obtain material evidence located in Indonesia, and that forcing them "to litigate a suit under such circumstances is oppressive." Fisher Reply at 11 (citing *STM Group, Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992, at *7 (C.D. Cal. July 18, 2011)). The Court agrees that Defendants would be prejudiced in their ability to fully and fairly litigate this matter if material and important evidence is out of reach because it is located in Indonesia. In this case, the concentration of evidence in Indonesia weighs heavily in favor of dismissal. *See Van Cauwenberghe v. Bard*, 486 U.S. 517, 528 (1988) ("To examine the relative ease of access to sources of proof . . . , the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.") (citations omitted).

### 4.     Enforceability of Judgment

The parties do not dispute that any judgment rendered in Indonesia would be enforceable in Delaware, the state of Fisher's incorporation, under the Delaware Uniform Foreign Money-Judgments Recognition Act, 10 Del. C. §§ 4802 *et seq*.   Plaintiffs argue that this factor is neutral because a judgment rendered in Hawaiʻi would also be enforceable in Delaware.   The Court agrees.   *See Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009) ("Neither party has argued that there would be any problem enforcing a judgment in either forum, and thus the district court properly concluded that the sixth public interest factor was neutral.").[4]

### 5.     Convenience to Litigants

Hawaiʻi is Plaintiffs' home forum and is most convenient for them. Herbert is still recovering from surgery related to his mesothelioma, and Plaintiffs argue that he "is not in a state of health that would permit travelling to and from Indonesia for trial."   Mem. in Opp. at 15.   Plaintiffs also contend that they "could not afford to litigate a case in Indonesia."   *Id.* at 16 (citing *Raffaele v. Compagnie*

---

[4]As set forth, *infra*, the Court conditions dismissal on Defendants' agreement that any Indonesian judgment could be enforced against them in the United States or anywhere else they hold assets. *Cf. Carijano*, 643 F.3d at 1232 (Finding that this factor weighs against dismissal "[b]ecause the district court did not require Occidental to agree that any Peruvian judgment could be enforced against it in the United States, or anywhere else it held assets, as a condition for dismissal.").

*Generale Maritime*, 707 F.2d 395, 399 (9th Cir. 1983) ("Access to an Oregon court is important to Raffaele's chances for relief.")).   Fisher argues that its status as a Delaware LLC with its principal place of business in Pennsylvania does not support Plaintiffs' claim that the case should remain here, because Fisher is not a resident of Hawai'i.   Fisher acknowledges that Plaintiffs' convenience is material, but argues that it is only one factor for the Court to consider.   The Court finds that the convenience to the litigants of proceeding in Hawai'i tips in favor of Plaintiffs.

### 6.   Other Practical Problems Impacting Trial

Finally, the Court considers all other practical problems that make trial of a case easy, expeditious and inexpensive.   The Court notes that both Fisher and Sargent-Welch have agreed to submit to service in Indonesia, and the Court conditions its dismissal on such agreement.

The remaining practical considerations largely counterbalance each other.   Plaintiffs argue that language weighs against dismissal because none of the parties speaks Bahasa Indonesia, the official language of Indonesia.   Defendants argue that moving the action to Indonesia would permit them to join Indonesian third-party defendants responsible for Herbert's alleged exposure to asbestos, something they could not do in a domestic forum.   *See Piper Aircraft*, 454 U.S. at 259 (explaining that "the inability to implead potential third-party defendants" can

be a factor weighing in favor of dismissal).   These competing concerns render this final private interest factor neutral.

### 7.    <u>Summary of Private Interest Factors</u>

The private interest factors relating to the residence of and convenience to the parties favor Plaintiffs.   Factors relating to the enforceability of a judgment and other practical considerations are neutral.   The remaining private interest factors weigh strongly in favor of dismissal.   In particular, because Herbert's exposure in Indonesia remains the focus of his claims, and significant relevant evidence and witnesses remain in Indonesia beyond the Court's power to compel, the Court finds that the private interest factors tilt decidedly in favor of dismissal. *See Dibdin v. South Tyneside NHS Healthcare Trust*, 2013 WL 327324, at *5 (C.D. Cal. Jan. 29, 2013) ("the private factors will weigh in favor of a foreign forum when essentially all the events giving rise to a suit occur there").

### C.    <u>Public Interest Factors Weigh In Favor of Dismissal</u>

The Court turns now to the five public interest factors: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."   *Tuazon*, 433 F.3d at 1181(citing *Lueck*, 236 F.3d at 1147).

## 1.   <u>**Local Interest**</u>

"There is a local interest in having localized controversies decided at home." *Gulf Oil Corp.*, 330 U.S. at 509.   The parties dispute, however, which forum has a greater local interest in the lawsuit.[5]   Defendants argue that Indonesia has a strong interest in regulating potentially injurious conduct that occurs within its borders, as well as providing a remedy for residents injured by that conduct. Defendants further remark that Hawaii's only connection to this case is that Plaintiffs chose to move here five years after leaving Indonesia.   Plaintiffs note that Herbert's injury manifested, was diagnosed, and is being treated in Hawaiʻi.   They contend that Hawaiʻi has a strong interest in ensuring the welfare of its residents, but acknowledge that Indonesia would also have an interest in this case.   Mem. in Opp. at 30.

---

[5]In *Carijano*, the Ninth Circuit observed that there is "a difference of opinion about whether it is appropriate to compare the state interests, or whether this factor is solely concerned with the forum where the lawsuit was filed."   *Carijano*, 643 F.3d at 1233 n.3.   *Carijano* compared language in *Tuazon*, 433 F.3d at 1182 ("with this interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest"), and *Boston Telecomms.*, 588 F.3d at 1212 (noting that whether a state "has more of an interest than any other jurisdiction" is not relevant), with *Lueck*, 236 F.3d at 1147 (balancing the interests of the foreign and domestic jurisdictions and finding the factor tipped toward dismissal because the "local interest in this lawsuit is comparatively low").   *Carijano* ultimately looked at the interests of *both* fora, and this Court opts to do the same, given that *forum non conveniens* analysis focuses on the *relative* merits of two (or more) venues, not the merits of one in a vacuum.

While clearly both venues have some interest, it appears to the Court that Indonesia's interest is greater. Both Hawai'i and Indonesia have an interest in ensuring that victims within their respective borders are appropriately compensated by those responsible for tortious acts. But Indonesia has the additional interest of ensuring that those guilty of tortious acts within its borders do not evade or escape responsibility and do not act again to harm individuals beyond just Plaintiffs. Further, Plaintiffs had no connection to Hawai'i as far as this Court is aware until 2003, five years after leaving Indonesia and nearly two decades after the onset of Herbert's alleged exposure to Defendants' products. Hawai'i's interest, in other words, is no greater than any other venue to which Plaintiffs had chosen to relocate would have had. Indonesia, by contrast, is the place where Defendants' allegedly tortious conduct occurred, where Herbert's alleged exposure occurred over the span of several years, and where both Plaintiffs and Defendants chose to avail themselves. *Cf. Piper Aircraft Co*., 454 U.S. at 260-61 (holding that the U.S. interest in "ensuring that American manufacturers are deterred from producing defective products" was "simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.") (citation and quotations omitted); *Jennings v. Boeing Co*., 660 F. Supp. 796, 808 (E.D. Pa. 1987) ("[a]lthough Pennsylvania and the United States may have

a generalized interest in deterring their residents from manufacturing defective products, the English and Scottish governments have an intensely local interest in regulating the sale and operation of aircraft within their territory").

For these reasons, the local interest factor tips in favor of Indonesia.

## 2. Court's Familiarity With Governing Law

With respect to the governing law, both parties have asserted reasonable explanations that either Indonesia or Hawai'i law applies. Plaintiffs argue that Hawai'i law would apply because Herbert's illness manifested while he was living in Hawai'i and because Hawai'i has the strongest interest in seeing its laws applied. Mem. in Opp. at 31 (citing *Lewis v. Lewis*, 69 Haw. 497, 499 (1981)). Defendants argue that Indonesian law governs Plaintiffs' claims because all of the relevant events giving rise to their claims occurred in Indonesia. Reply at 17 (citing *Roxas v. Marcos*, 89 Haw. 91, 117 n.16 (1998) (holding that Philippines law applied where "all the relevant events occurred in the Philippines" and the parties "were residents of the Philippines" at the time those events occurred)).

As was the case in *Carijano*, "resolving the conflict of law issue would involve a full blown analysis of the state interests and relative impairment." *Carijano*, 643 F.3d at 1234. The Court does not undertake such an analysis at this time. *See id.* ("As the district court noted, *forum non conveniens* is designed so that

courts can avoid such inquiries at this early stage. *See Piper*, 454 U.S. at 251, 102

S. Ct. 252 ('The doctrine of *forum non conveniens*, however, is designed in part to

help courts avoid conducting complex exercises in comparative law.'); *Lueck*, 236

F.3d at 1148 (noting that district courts need not make a choice of law determination

to decide a *forum non conveniens* motion that does not involve a statute requiring

venue in the United States)."). Here, the mere possibility that foreign law would

apply weighs in favor of dismissal. *See In re Air Crash at Madrid, Spain, on*

*August 20, 2008*, 893 F.Supp.2d 1020, 1040 (C.D. Cal. 2011) ("The mere likelihood

or possibility that foreign law would apply weighs in favor of dismissal.").

### 3. Burden on Local Courts and Juries, Congestion, and Costs of Resolving a Dispute Unrelated to a Particular Forum

The remaining public interest factors "all relate to the effects of hearing

the case on the respective judicial systems." *Carijano*, 643 F.3d at 1232. With

respect to the burden on local courts and juries, Defendants contend that the burden

on this Court and a local jury would be out of proportion with Hawaii's interest in

the case because it turns on events that occurred largely in Indonesia. Plaintiffs

contend that Courts in Hawaiʻi have a significant interest in this case and that there

would be no language burden because their witnesses are English speakers and their

physical evidence will be in English. As discussed above, both Hawaiʻi and

25

Indonesia have an interest in this matter. The Court finds, however, that the particulars of this case, including language issues, could pose a significant burden on this Court. *See Lueck*, 236 F.3d at 1147 (holding that, "[b]ecause the local interest in this lawsuit is comparatively low, the citizens of Arizona should not be forced to bear the burden of this dispute"); *In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d at 1042 ("Where the local interest in a controversy is weak as compared to the alternative forum's interest, courts have held that the burden on local courts and juries, and the related costs, are not justified.").

Moreover, it appears that the case could proceed more expeditiously in Indonesia. According to Fisher's unrebutted expert on Indonesian law, civil cases must be resolved within a period of six months in Indonesia. Harjanto Decl. ¶ 37. In this district, the median time in 2013 for civil cases from filing to trial was 11.7 months. *See* U.S. Courts, Caseload Statistics 2013: Table C–5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition During the 12-Month Period Ending September 30, 2013, *available at* http://www.uscourts.gov/uscourts/ Statistics/JudicialBusiness/2013/appendices/C05Sep13.pdf.

The Court concludes that the weight of the public interest factors support dismissal.

**IV.    Dismissal Is Warranted Here, Subject to Conditions**

When considered together, the Court finds that the balance of private and public factors weigh in favor of dismissal and outweigh the deference owed to Plaintiffs' chosen forum.   Indonesia is not just an adequate forum, but a more appropriate and convenient one, given the particular facts and circumstances of this case, and the private and public interest factors strongly favor litigating this case there.

As the Supreme Court has explained –

A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 429 (2007) (alterations and internal quotation marks omitted).   Defendants have made the necessary showing to "establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience."   *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

The Court acknowledges that the doctrine of *forum non conveniens* is an exceptional tool to be employed sparingly.   The Court is also sympathetic to

Plaintiffs' contention that Herbert's state of health and regular doctor appointments would not permit him to easily travel to and from Indonesia. Nonetheless, the Court in its discretion finds that this is a proper case for the careful application of that doctrine.

The Court hereby conditions its *forum non conveniens* dismissal on Defendants' agreement to: (1) submit to service in Indonesia; (2) toll any statute of limitations that might apply to Plaintiffs' re-filed claims for 120 days after dismissal by this Court; (3) make available in an action filed by Plaintiffs in Indonesia any relevant evidence or witnesses in Defendants' possession, custody or control in the United States; and (4) allow for the enforcement of any Indonesian judgment in the United States or anywhere else where Defendants hold assets. Moreover, although there is no evidence that Defendants have acted to the contrary, the Court directs them to cooperate in good faith in all pretrial and trial aspects of any Indonesian litigation. *See Carijano*, 643 F.3d at 1234 ("District courts are not required to impose conditions on *forum non conveniens* dismissals, but it is an abuse of discretion to fail to do so when there is a justifiable reason to doubt that a party will cooperate with the foreign forum.") (citation omitted).

## CONCLUSION

On the basis of the foregoing, the Court hereby GRANTS Defendant Fisher Scientific Company L.L.C.'s Motion to Dismiss First Amended Complaint on the Grounds of *Forum Non Conveniens,* subject to the conditions set forth in this order.   The Office of the Clerk is directed to close this case.

IT IS SO ORDERED.

Dated: April 14, 2014, at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

James Herbert et al., v. Fisher Scientific, et al; Civil No. 13-00452 DKW-BMK;
**ORDER GRANTING DEFENDANT FISHER SCIENTIFIC COMPANY LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS***

29